UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ELIJAH CAPEHART,

    Petitioner,

-vs-                                                      Case No. 8:16-cv-2222-T-02SPF

SECRETARY, DEPARTMENT
OF CORRECTIONS,

    Respondent.
_____/

## ORDER

Mr. Capehart, a Florida prisoner, initiated this action by filing a petition for a writ of habeas corpus under 28 U.S.C. § 2254 ("petition") (Doc. 1). Respondent filed a response in opposition to the petition (Doc. 9), to which Mr. Capehart replied (Doc. 14). Upon consideration, the petition will be denied.

## I. BACKGROUND

Mr. Capehart pleaded guilty to burglary, and was sentenced as a prison releasee reoffender to fifteen years in prison (Respondent's Ex. 11). He did not appeal. He filed a motion for post-conviction relief under Rule 3.850, Florida Rules of Criminal Procedure, alleging ineffective assistance of trial counsel (Respondent's Exs. 7, 9). The motion was denied (Respondent's Ex. 10), and the denial was affirmed on appeal (Respondent's Ex. 2). Mr. Capehart filed his federal habeas petition (Doc. 1) in which he alleges three claims of ineffective assistance of defense counsel.

## II. GOVERNING LEGAL PRINCIPLES

Because Mr. Capehart filed his petition after April 24, 1996, this case is governed by 28

U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *Penry v. Johnson*, 532 U.S. 782, 792 (2001); *Henderson v. Campbell*, 353 F.3d 880, 889-90 (11th Cir. 2003). The AEDPA "establishes a more deferential standard of review of state habeas judgments," *Fugate v. Head*, 261 F.3d 1206, 1215 (11th Cir. 2001), in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002); *see also Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (recognizing that the federal habeas court's evaluation of state-court rulings is highly deferential and that state-court decisions must be given the benefit of the doubt).

## A. Standard of Review Under the AEDPA

Pursuant to the AEDPA, habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The phrase "clearly established Federal law," encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

"[S]ection 2254(d)(1) provides two separate bases for reviewing state court decisions; the 'contrary to' and 'unreasonable application' clauses articulate independent considerations a federal court must consider." *Maharaj v. Secretary for Dep't. of Corr.*, 432 F.3d 1292, 1308 (11th Cir. 2005). The meaning of the clauses was discussed by the Eleventh Circuit Court of Appeals in

*Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001):

> Under the "contrary to" clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme Court] has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the United States Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

If the federal court concludes that the state court applied federal law incorrectly, habeas relief is appropriate only if that application was "objectively unreasonable." *Id.*

Finally, under § 2254(d)(2), a federal court may grant a writ of habeas corpus if the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." A determination of a factual issue made by a state court, however, shall be presumed correct, and the habeas petitioner shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. *See Parker*, 244 F.3d at 835-36; 28 U.S.C. § 2254(e)(1).

## B. Standard for Ineffective Assistance of Counsel

The United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance: (1) whether counsel's performance was deficient and "fell below an objective standard of reasonableness"; and (2) whether the deficient performance prejudiced the defense.[1] *Id.* at 687-88. A court must adhere to a strong presumption

---

[1] In *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993), the United States Supreme Court clarified that the prejudice prong of the test does not focus solely on mere outcome determination; rather, to establish prejudice, a criminal defendant must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable.

3

that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.* at 689-90. "Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690; *Gates v. Zant*, 863 F.2d 1492, 1497 (11th Cir. 1989).

As observed by the Eleventh Circuit Court of Appeals, the test for ineffective assistance of counsel:

> has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. Courts also should at the start presume effectiveness and should always avoid second guessing with the benefit of hindsight. *Strickland* encourages reviewing courts to allow lawyers broad discretion to represent their clients by pursuing their own strategy. We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992) (citation omitted). Under those rules and presumptions, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).

### III. ANALYSIS

**Ground One:** INEFFECTIVE ASSISTANCE OF COUNSEL FOR TRIAL COUNSEL'S FAILURE TO INVESTIGATE, DEPOSE, AND CALL CERTAIN WITNESSES THAT HAVE EXCULPATORY TESTIMONY

Mr. Capehart alleges that although he informed counsel that Letrell [sic] Dunbar and Derek Williams were witnesses who would testify that he was innocent of the burglary, counsel failed to depose them or call them to testify on his behalf. He contends that trial counsel was ineffective in failing to call these two witnesses, and that he was prejudiced because their testimony would have

4

provided him with a "valid defense." In his reply, Mr. Capehart contends that Dunbar would have testified that at the time of the burglary he was the victim's boyfriend, he and Mr. Capehart were at the crime scene solely to retrieve Dunbar's personal property, and Mr. Capehart never was in possession of the property (Doc. 14, pp. 3-4). Mr. Capehart further contends that Williams would have testified that he pawned the property taken from the scene of the crime (Id., p. 4).

This claim was raised in Ground I of Mr. Capehart's state Rule 3.850 motion (Respondent's Ex. 9, pp. 56-60). In denying the claim, the state post-conviction court stated:

> The Defendant argues that counsel rendered ineffective assistance by failing to call, depose, or investigate Latrale Dunbar and Derek Williams. Specifically, the Defendant alleges that these witnesses would have provided testimony proving his innocence. The Defendant claims that had counsel interviewed these witnesses, he would not have entered a plea and would have proceeded to trial. The Court will address each of these witnesses in separate headings below.
>
> **Latrale Dunbar**
>
> The Defendant claims that counsel failed to call, investigate, or depose Latrale Dunbar. The Defendant contends that this witness was available and would have testified that the property stolen during the burglary was never in the Defendant's possession, but rather the witness had the property. The Defendant claims this testimony would have exonerated him and had counsel investigated this witness, he would not have entered a plea and would have proceeded to trial.
>
> The Defendant's claim, however, is refuted by the record. The Court held a hearing on the Defendant's Motion to Dismiss Counsel on May 23, 2014. During the hearing, the Defendant alleged that counsel failed to investigate or depose Latrale Dunbar. On the record, counsel indicated that she attempted to contact Latrale Dunbar several times and when finally speaking to him, he denied knowing the Defendant or being involved with the offense in any way. After a thorough review of counsel's actions regarding this witness, the Court found that counsel did investigate Latrale Dunbar and stated that "there's nothing that Ms. Moorhead could be doing in addition to what she's done." (See Exhibit B: Transcript of Motion Hearing, pp. 4-12, 23-26). Therefore, the Defendant fails to establish that counsel was deficient.
>
> Even if counsel was deficient, which the Court does not find, the Defendant

5

fails to establish that he was prejudiced. The record reflects that the victim's house was broken into via her bedroom window. The Defendant's blood was found inside the victim's bedroom. The probability of his DNA profile belonging to another individual was found to be one in 430 quintillion in the African American population. (See Exhibit C: Deposition of Beth Ordman, pp. 3-4; Exhibit D: Deposition of Ryan Satcher, pp. 3-4). Therefore, even if Latrale Dunbar testified that he had obtained the stolen property, this testimony would not have exonerated the Defendant in light of the DNA evidence against him. For the aforementioned reasons, this claim is denied.

**Donald Williams**

The Defendant maintains that counsel failed to call, investigate, or depose Donald Williams. [FN1]. The Defendant claims that this witness was available and would have testified that he sold the stolen property from the burglary at a pawn shop, not the Defendant. The Defendant argues that this testimony would have proved his innocence and had counsel investigated this witness, he would not have entered a plea and would have proceeded to trial.

The Defendant's claim, however, is again refuted by the record. At the motion hearing on May 23, 2014, the Court addressed the Defendant's complaint that counsel had not investigated Donald Williams. On the record, counsel indicated that she had attempted to contact Mr. Williams several times but was unable to do so. While the Defendant maintained that his family knew how to contact Mr. Williams, counsel indicated that the Defendant's family did not provide her with any reliable contact information for him. Moreover, the Defendant was unable to provide the location of the pawn shop to counsel so she could investigate this defense further. Counsel testified that both she and her investigator were unable to locate this individual after numerous attempts to do so. (See Exhibit B at 5-10, 12-23). Therefore, the record demonstrates that counsel did investigate Mr. Williams. Thus, the Defendant fails to establish that counsel was deficient.

In addition, the Defendant fails to establish that he was prejudiced. The Defendant was not charged with dealing in stolen property. Rather, the Defendant was charged with and pled guilty to burglary. Further, the Defendant's blood was found at [sic] inside the burglarized residence. (See Exhibits C and D). Therefore, it is unclear how testimony from Mr. Williams about selling property at a pawn shop would have exonerated the Defendant on the burglary charge. Thus, the Defendant fails to establish that he was prejudiced. For the aforementioned reasons, this claim is denied.

[FN1] The Defendant indicates in his motion that counsel failed in investigate Derek Williams. However, on the record during the Defendant's motion to dismiss hearing

6

on May 23, 2014, the Defendant names Donald Williams. Based on the hearing and the content of the Defendant's present motion, the Court finds that the Defendant's use of Derek is a scrivener's error.

(Respondent's Ex. 10, pp. 2-4).

Initially, this claim does not warrant relief since "[c]omplaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative." *Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir. 1978) (citations omitted). Moreover, "evidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or an affidavit. A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim." *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991) (footnotes omitted). Hence, the "petitioner must first make a sufficient factual showing, substantiating the proposed witness testimony." *Percival v. Marshall*, 1996 WL 107279 at *3 (N.D. Cal. March 7, 1996), *affirmed*, 106 F.3d 408 (9th Cir. 1997). "Such evidence might be sworn affidavits or depositions from the potential witnesses stating to what they would have testified." *Id.*

Mr. Capehart has failed to present either actual testimony or an affidavit from Dunbar and Williams. How they would have testified is therefore purely speculative. Accordingly, Mr. Capehart's claim is insufficient to demonstrate ineffective assistance of counsel.

Even if Mr. Capehart had provided actual testimony from either Williams or Dunbar, he still cannot demonstrate ineffective assistance. During the hearing on Mr. Capehart's motion to dismiss counsel, his trial counsel testified that she attempted to find Williams, but neither Mr. Capehart or his family were able to give any more information than Williams' name, physical description, and

the city in which he lived (Respondent's Ex. 12, transcript pp. 13-14). Counsel's own investigation revealed a possible phone number and address for Williams. However, each time counsel called, the call went straight to a voicemail, and noone returned the calls (Id., transcript pp. 6, 13-14). Counsel cannot be deemed ineffective in failing to depose or call a witness that could not be located after a reasonable investigation.

Counsel further testified that her investigator found and spoke to Dunbar (Id., transcript pp. 10-11). Dunbar, however, denied knowing Mr. Capehart or anything about the burglary (Id., transcript pp. 11-12). And Mr. Capehart has failed to present any evidence that Dunbar was involved in or knew anything about the burglary. Therefore, counsel was not ineffective in failing to call a witness that was not helpful to the defense.

Mr. Capehart has failed to show that the state courts' denial of this claim involved an unreasonable application of *Strickland* or was based on an unreasonable determination of the facts. Accordingly, Ground One does not warrant federal habeas relief.

**Ground Two:** INEFFECTIVE ASSISTANCE OF COUNSEL FOR TRIAL COUNSEL'S FAILURE TO MOVE THE TRIAL COURT ON A MERITORIOUS MOTION FOR DETERMINATION ON DEFENDANT'S COMPETENCY (TO PROCEED)

Mr. Capehart alleges he informed defense counsel that he had "a number of mental ailments," including "episodes of psychosis where he is literally not coherent and is seeking relief from hearing voices," and needed a mental health evaluation. He contends that counsel was ineffective in failing to move the trial court to make a competency determination.

In state court, Mr. Capehart raised this claim in Ground II of his Rule 3.850 motion (Respondent's Ex. 9, record pp. 60-63). In denying the clam, the state post-conviction court stated,

8

in pertinent part, that:

> [T]he record demonstrates that the Defendant was competent to proceed. The Defendant testified at his motion hearing, which occurred less than a week prior to the entry of his plea. The Defendant recounted the facts of the case in a way that demonstrated that he knew what the charges were about and the witnesses involved. (See Exhibit B at 4, 6-25). The Defendant indicated that he informed counsel of potential witnesses and their involvement to his defense. (See Exhibit B at 5-25). The Defendant's remarks to the Court indicated that he had a working understanding of the purpose of the hearing and the Court's role in assessing whether counsel was doing what she needed to be doing on his case. (See Exhibit B at 8-10). Further, the Defendant's testimony at the motion hearing demonstrates that he appreciated the charges against him, appreciated the range and nature of possible penalties, understood the adversary nature of the hearing, could manifest appropriate courtroom behavior, and could testify relevantly. See Fla. R. Crim. P. 3.211(a)(2). Accordingly, the Defendant was not prejudiced because, if counsel had moved for a competency evaluation, the Defendant would have been found competent. Ground two is therefore denied.

(Respondent's Ex. 12, record p. 72).

"[T]he conviction of an accused person while he is legally incompetent violates due process[.]" *Pate v. Robinson*, 383 U.S. 375, 378 (1966). The test for determining a defendant's competency to stand trial or enter a plea is "whether he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding--and whether he has a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402 (1960).

Mr. Capehart has not alleged let alone presented evidence demonstrating that he was legally incompetent at the time he entered his guilty plea. He merely makes an unsupported allegation that at some unspecified time he had "episodes of mental psychosis." Mental illness alone, however, is not enough to establish that he was incompetent to plead guilty. *See Medina v. Singletary*, 59 F.3d 1095, 1107 (11th Cir. 1995) ("Not every manifestation of mental illness demonstrates incompetence

9

to stand trial; rather, the evidence must indicate a present inability to assist counsel or understand the charges.") (quotation marks and alterations omitted); *Bolius v. Wainwright*, 597 F.2d 986, 990 (5th Cir. 1979) ("[T]he mere presence of mental illness or other mental disability at the time [the defendant] entered his plea does not necessarily mean that he was incompetent to plead. . . .").

The state post-conviction court found that Mr. Capehart would have been found competent had counsel moved for a competency hearing. "A presumption of correctness attaches to a state court's finding of competence and a federal habeas court must determine that the finding is not 'fairly supported by the record' before it may overturn a state courts' decision." *Medina*, 59 F.3d at 1106 (quoting *Maggio v. Fulford*, 462 U.S. 111, 117 (1983)). After consideration of the record, the court concludes that the state court's finding that Mr. Capehart would have been found competent is "fairly supported by the record," and Mr. Capehart has failed to create a legitimate and substantial doubt regarding his competency at the time that he entered his plea.

During the hearing on Mr. Capehart's motion to dismiss counsel, which was held less than a week before Mr. Capehart pleaded guilty, he showed that he had a rational and factual understanding of the proceedings. His testimony implied that he knew he was charged with a burglary, and that he believed there were witnesses that could support a defense to the charge (Respondent's Ex. 12). His testimony further demonstrated that he was able to consult with his attorney regarding the case because it showed that he had informed counsel of the witnesses and other evidence that could support his defense (Id.). Moreover, he was capable of following counsel's instruction, as demonstrated by the fact that he complied when counsel instructed him to stop discussing the facts of the case with the court (Id., transcript pp. 24-25).

In sum, the record supports the conclusion that Mr. Capehart was competent at the time he

entered his plea. Moreover, there is no evidence that Mr. Capehart was incompetent at that time. Counsel therefore was not ineffective in failing to move for a competency hearing.

Mr. Capehart has failed to show that the state courts' denial of this claim involved an unreasonable application of *Strickland* or was based on an unreasonable determination of the facts. Accordingly, Ground Two does not warrant federal habeas relief.

**Ground Three:** **TRIAL COUNSEL MISINFORMED THE DEFENDANT TO THE POSSIBLE RANGE OF PENALTY IF DEFENDANT SHOULD DECIDE TO PROCEED TO TRIAL**

In his petition, Mr. Capehart contends that defense counsel was ineffective in informing him that if he proceeded to trial and lost, he would "automatically" receive a 45-year sentence (Doc. 1, p. 9). In his reply, however, Mr. Capehart alleges that although the statutory maximum sentence for burglary was 15 years, counsel "advised the defendant on was [sic] a *possible* 45 (forty-five) year sentence in the event that the defendant should proceed to trial." (Doc. 14, p. 9) (emphasis added). He therefore contends that counsel "fail[ed] to properly inform [him] of the possible range of penalty. . . ." (Id.). He asserts that but for this erroneous advice, he would have proceeded to trial (Id.).

In Ground III of his state Rule 3.850 motion, Mr. Capehart alleged that "trial counsel misinformed [him] to the possible range of penalty in the event that [he] should choose to proceed to trial." (Respondent's Ex. 9, record p. 63). He alleged that the statutory maximum sentence for burglary was 15 years, but counsel advised him that he possibly could receive up to 45 years if he proceeded to trial (*Id.*). In denying Ground III, the state post-conviction court stated:

> In Ground Three, the Defendant states that counsel misadvised him that he would automatically receive the maximum penalty of 45 years' imprisonment if he was convicted. The Defendant maintains that the maximum penalty he

could-have received for a second degree felony is 15 years imprisonment and that without counsel's misadvice, he would not have entered a plea and would have proceeded to trial.

The Defendant fails to establish that counsel was deficient or that he was prejudiced. The State filed notices seeking to enhance the Defendant's penalty as a habitual felony offender, a violent career criminal, and a prison releasee reoffender, which were sent to and signed by the Defendant on September 23, 2013. (See Exhibit E: Notice of Enhanced Penalties). Prior to trial, counsel notified the Defendant that the maximum penalty he could receive upon conviction was 40 years' imprisonment with a minimum mandatory term of 30 years' imprisonment, pursuant to section 775.084(4)(d)2. (See Exhibit B at 6, 27). Therefore, the Defendant was advised by counsel of the maximum penalty that he could have received if convicted after trial. Therefore, counsel was not deficient and the Defendant's contention that the maximum penalty he could receive was fifteen years' imprisonment is without merit.

Even if counsel was deficient, which the Court does not find, the Defendant has failed to demonstrate a reasonable probability that he would not have entered a plea and would have insisted on going to trial if he had known that the maximum sentence he could receive was 40 years' imprisonment. In determining whether a reasonable probability exists that the defendant would have insisted on going to trial, a court should consider the totality of the circumstances surrounding the plea, such as the colloquy at the time of the plea, and the difference between the sentence imposed under the plea and the maximum possible sentence defendant faced at trial. See Grosvenor, 874 So. 2d at 1181-82. In light of the fact that Defendant was sentenced to fifteen years' imprisonment when he faced a maximum of forty years in prison, as well as the fact that the evidence against him included the blood of the Defendant at the scene of the offense, the Court finds that the Defendant has not shown that there is a reasonable probability that be would have insisted on going to trial but for counsel's alleged advice that he could receive a sentence of 40 years' imprisonment. For the aforementioned reasons, this claim is denied.

(Respondent's Ex. 10, pp. 5-6).

Mr. Capehart's claim is based on the incorrect premise that the maximum sentence he could receive if he were convicted of burglary was 15 years. At the time of Mr. Capehart's offense, burglary constituted a second-degree felony with a maximum punishment of 15 years' imprisonment. See §§ 775.082(3)(d), 810.02(1)(b), (3)(b), Florida Statutes (2013). Mr. Capehart, however,

12

qualified for enhanced penalties as a habitual felony offender, violent career criminal, and prison releasee reoffender (Respondent's Ex. 14). As a violent career criminal, he faced a potential sentence of forty years, with thirty years being mandatory. See § 775.084(4)(d)2., Fla. Stat., (2013). Accordingly, defense counsel did not render deficient performance, as Mr. Capehart alleges, in failing to advise him that if he proceeded to trial the maximum sentence would be 15 years (see Doc. 14, pp. 8-9). In fact, counsel would have rendered deficient performance had she so advised, since Mr. Capehart was subject to a 30-year minimum mandatory sentence as a violent career offender.

Even if counsel was deficient, Mr. Capehart has failed to demonstrate that he suffered prejudice. In order to demonstrate prejudice under the second prong of *Strickland* in a case in which the defendant enters a guilty plea, the defendant must show that, but for counsel's deficient performance, there is a reasonable probability that he would not have entered the plea and would have proceeded to trial. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). A mere allegation by a defendant that he would have insisted on going to trial but for counsel's errors, although required, is insufficient to establish prejudice; rather, the court will look to the factual circumstances surrounding the plea to determine whether the defendant would have proceeded to trial. *See Miller v. Champion*, 262 F.3d 1066, 1072 (10th Cir. 2001); *United States v. Arvanitis*, 902 F.2d 489, 494 (7th Cir. 1990).

Mr. Capehart has not shown that the state post-conviction court's determination that he failed to demonstrate prejudice was unreasonable. The record reflects that before Mr. Capehart pleaded guilty, he received notice that the State was seeking to enhance his sentence as a habitual felony offender, a violent career criminal, and a prison releasee reoffender (Respondent's Ex. 14), and he was informed that he was facing up to 40 years in prison with a 30-year minimum mandatory as a violent career criminal (Respondent's Ex. 12, transcript pp. 6, 27). Accordingly, Mr. Capehart was

13

aware that if he proceeded to trial and lost, he was facing a sentence of no less than 30 years and up to as many as 40 years. By pleading guilty, he avoided sentencing as a recidivist. Moreover, the evidence against Mr. Capehart was strong because DNA evidence established that he was at the scene of the burglary (Respondent's Ex. 13).

Given the strength of the evidence against Mr. Capehart, and the 30 to 40 year sentence he faced had he proceeded to trial and lost, rather than the 15-year sentence he received by pleading guilty, the Court concludes that Mr. Capehart has not established that the state court's denial of this claim is contrary to, or an unreasonable application of, *Strickland* or *Hill*. In other words, Mr. Capehart has not shown that if counsel had not advised him that he faced "a possible 45 (forty-five) year sentence" (see Doc. 14, p. 9), he would not have entered a plea but would have proceeded to trial. Accordingly, Ground Three does not warrant federal habeas relief.

It is therefore **ORDERED** that:

1. The Petition for Writ of Habeas Corpus (Doc. 1) is **DENIED**.

2. The **Clerk of the Court** shall enter judgment accordingly and is directed to close this case.

3. This court should grant an application for a Certificate of Appealability only if the Mr. Capehart makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). He cannot make this showing.[2] Accordingly, a Certificate of Appealability is **DENIED** in this case. And because Mr. Capehart is not entitled to a Certificate of Appealability, he is not

---

[2]Pursuant to Rule 11 of the Rules Governing Section 2254 Cases In the United States District Courts,

The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue. . . .If the court denies a certificate, a party may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22. A motion to reconsider a denial does not extend the time to appeal.

entitled to proceed on appeal *in forma pauperis*.

**DONE AND ORDERED** in Tampa, Florida on _May 24th_, 2019.

_____
WILLIAM F. JUNG
United States District Judge

SA: sfc
Copies to:
Elijah Capehart, *pro se*
Counsel of Record